UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EILEEN SANGSTER,<br><br>    Plaintiff,<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, et al.,<br><br>    Defendants. | Case No. 23-cv-05438-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Before the Court is Hewlett Packard Enterprise Company ("Hewlett Packard") and Aruba Networks, LLC's ("Aruba Networks") (collectively, "Defendants") motion to dismiss. *See* Dkt. No. 15. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** the motion.

## I.   BACKGROUND

Plaintiff Ellen Sangster brings this gender discrimination case against her former employers Hewlett Packard and Aruba Networks. *See* Dkt. No. 1-2 ("Compl.") at ¶¶ 41–88. Plaintiff alleges that because of her gender she experienced retaliation, a hostile work environment, constructive discharge, and other forms of discrimination.

Plaintiff was hired in 2011 by Hewlett Packard and was moved to the company's Aruba Networks division as a Major Account Manager in 2016. *See id*. at ¶ 11. Plaintiff directly reported to Glenn Ferreira, the Vice President of Aruba Networks. *See id*. at ¶ 12. Plaintiff alleges that she was "the only female salesperson amongst the approximately 50 male Aruba Networks employees who[] reported to [Mr. Ferreira]." *Id.* She was also "one of three female system engineer employees amongst the approximately 80 [] employees reporting to Chris King,

Sales Engineering Executive Leader and Vice President of Aruba Networks across the Sales Engineers Division in the United States." *Id.* According to Plaintiff, this male dominated space had a "general culture of misogyny" where men got "preferential treatment" over women. *Id.* at ¶ 13. According to Plaintiff, men were paid more than women for comparable work. *Id.* She alleges that she "was the lowest paid on her team despite [doing] similar work" and having "substantially similar . . . skills." *Id.* at ¶ 34. Plaintiff alleges that though she and other women were paid less, they were given higher performance goals than men. *See id.* at ¶¶ 23, 33–34. Plaintiff alleges that male colleagues were given a "huge goal decrease" which put them "into ridiculous financial accelerators," whereas she was "expected to hit her higher targets without preferential treatment." *Id.* at ¶¶ 32–33.

Plaintiff also avers that men felt comfortable making inappropriate comments to women such as telling women that they did not know about sports, that they should "not [] talk during [] meeting[s]," or describing in detail (and even showing sexually suggestive photos of) their romantic partners. *Id.* at ¶¶ 16–19. Plaintiff alleges that after a male colleague told her that she should not talk during a meeting, she reported the incident to Mr. Ferreira. Plaintiff began to cry while making her complaint, and in response Mr. Ferreira called her "emotional." *Id.* at ¶ 18. Plaintiff also alleges that her male supervisors at Aruba Networks "exclud[ed] her from meetings," "bull[ied] her," and "attempt[ed] to hand off her commissions to a male employee." *Id.* at ¶ 35. Plaintiff avers that she "could no longer withstand the gender discrimination, harassment, and retaliation, and had no choice but to leave her employment on or about May 25, 2022." *Id.* at ¶ 36.

Plaintiff filed suit in Santa Clara Superior Court and brought causes of action for: (1) Gender Discrimination in Violation of Cal. Gov't Code § 12940(a) (FEHA); (2) Gender Harassment in Violation of Cal. Gov't Code § 12940(j) (FEHA); (3) Retaliation in Violation of Cal. Gov't Code § 12940(h) (FEHA); (4) Whistleblower Retaliation in Violation of Labor Code § 1102.5; (5) Failure to Take Steps Necessary to Prevent Gender Discrimination, Harassment, or Retaliation in Violation of Cal. Gov't Code § 12940(k) (FEHA); (6) Intentional Infliction of Emotional Distress; (7) Constructive Discharge in Violation of Public Policy; and (8) Violation of California Equal Pay Act (Labor Code §§ 1197.5 et seq., 1194.5). *See* Dkt. No. 1-2. Defendants

removed the action to this Court on the basis of diversity jurisdiction. *See* Dkt. No. 1.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint in its entirety for failure to state a claim. *See* Dkt. No. 15 ("Mot."). The Court disagrees and denies Defendants' motion.

### A. Gender Discrimination (FEHA)

California's Fair Employment and Housing Act ("FEHA") makes it unlawful for an employer to discriminate against any person "in terms, conditions, or privileges of employment"

3

because of age, gender, or disability, among other protected categories. *See* Cal. Gov't Code § 12940(a). To establish a prima facie case of discrimination under FEHA, Plaintiff must generally show that (1) she was a member of a protected class, (2) she was performing competently in her position, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive.[1] *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). Although this prima facie threshold is an evidentiary standard, not a pleading requirement, *see Austin v. Univ. of Oregon*, 925 F.3d 1133, 1136 (9th Cir. 2019), courts routinely look to these elements to decide whether a plaintiff has stated a plausible claim at the motion to dismiss stage, *see, e.g.*, *Lindsey v. Claremont Middle Sch.*, No. C 12-02639 LB, 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012).[2]

Defendants argue that Plaintiff fails to state a claim for FEHA gender discrimination because she has not adequately alleged that she suffered an adverse employment action and that any alleged adverse action was because of her gender. *See* Mot. at 4–6. According to Defendants, the "vast majority" of Plaintiff's allegations "do not relate to any 'official actions' taken by the Defendants" and thus cannot constitute an "adverse employment" action. *Id*. Defendants contend that the only two acts that could constitute adverse employment actions would be Plaintiff's assertion that she was constructively discharged and that she was subjected to higher sales goals compared to men. *See* Mot. at 4–5. Defendants contend that these allegations are factually unsupported and do not plausibly show gender discrimination. *See id*. at 5–6.

The Court disagrees. As Defendants point out, California "case law makes clear that FEHA's discrimination provision addresses only explicit changes in the terms, conditions, or privileges of employment that is, changes involving some official action taken by the employer." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 706 (2009) (cleaned up). Official action with respect to the employee often includes "firing, failing to promote, adverse job assignment, significant change

---

[1] This "prima facie case" is part of the *McDonnell Douglas* burden-shifting framework that courts use in analyzing disparate treatment claims under FEHA. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017).

[2] "[F]ederal cases are instructive" because "California law under the FEHA mirrors federal law under Title VII[.]" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir.1998).

in compensation or benefits, or official disciplinary action." *Id*. Plaintiff alleges that she and one other female colleague were subjected to higher sales goals than male colleagues. *See* Compl. at ¶ 23. Plaintiff "was expected to hit [] higher targets" than similarly situated male employees. *Id*. at ¶ 33. Not only did this impose different (and additional) burdens on Plaintiff, it had financial implications. *See id*. at ¶ 32 ("Mr. Ferreira and Mr. McNeill had given Mr. Manning a huge goal decrease, which put him into ridiculous financial accelerators."). The Ninth Circuit has held that "assigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). If ultimately true, this action could have materially affected the terms, conditions, or privileges of Plaintiff's employment. Specifically, unevenly raising the bar for what constitutes adequate performance could have the effect of jeopardizing an employee's career, present and future earnings, and ability to advance within the company.

Plaintiff has also adequately alleged that this occurred because of gender. She avers that Mr. Ferreira told another male supervisor that he changed the goals for the team to "give relief to the men on the team and [to] increase Plaintiff and [the other female employee's] goals." Compl. at ¶ 23. If proven, this would suggest that gender was a motivating factor for Mr. Ferreira to have treated Plaintiff differently. *See McDonald v. Coldwell Banker*, 543 F.3d 498, 504 (9th Cir. 2008) ("A discriminatory motive under the FEHA has been defined as something that 'moves the will and induces action.'"). Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's gender discrimination claim.[3]

---

[3] California courts also use a "totality of the circumstances approach" to assess whether an "employee is affected by a series of employment actions, at least some of which might not, in and of themselves, constitute a material change in the terms or conditions of employment." *McRae v. Dep't. of Corrections & Rehabilitation*, 142 Cal. App. 4th 377, 388 (2006). The Court finds that Plaintiff has sufficiently alleged adverse employment action under this theory. Plaintiff's complaint alleges that her supervisors left her out of meetings, discouraged her from speaking in meetings, lowered the performance bar for men (who then got promoted as a result) while artificially raising the bar for her, and made disparaging comments towards her. Collectively, Plaintiff's allegations could constitute a material change in the terms or conditions of her employment even if a single action alone would not.

### B. Gender Harassment (FEHA)

To establish a prima facie case of harassment under FEHA, Plaintiff must plead that "(1) she was subjected to verbal or physical conduct of a harassing nature that was based on her [gender], (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Nagar v. Foundation Health Sys., Inc.*, 57 F. App'x 304, 306 (9th Cir. 2003) (quoting *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)).  To fulfill the "severe or pervasive" prong, a plaintiff must show a "concerted pattern of harassment of a repeated, routine, or generalized nature." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014).  Isolated incidents that are not part of a concerted pattern can also fulfill the "severe or pervasive" prong, but only if such isolated incidents consist of "a physical assault or the threat thereof." *Id*. (quoting *Hughes v. Pair,* 46 Cal. 4th 1035, 1049 (2009)).  Further, whether an environment is hostile can be determined "only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 704 (cleaned up).

At this stage Plaintiff sufficiently alleges that Defendants' harassment was "severe or pervasive" and was based on her gender.  Plaintiff avers that Defendants' general workplace culture was hostile toward women.  Her complaint alleges a widespread culture of favoritism for men at the expense of women.  *See, e.g.,* Compl. at ¶¶ 23–29.  In addition to men being favored, Plaintiff alleges that women were demeaned and discouraged from speaking out against this alleged degradation.  *See id*. at ¶¶ 15–22, 27.  Under California law, allegations of "widespread sexual favoritism" can support a hostile work environment claim.  *Miller v. Dep't. of Corrections*, 36 Cal. 4th 446, 466 (2005).  As for conduct directed personally at her, Plaintiff has alleged that she was given higher performance goals, was denied equal pay, and was excluded from meetings on the basis of her gender.  Compl. at ¶¶ 23, 32–35.  Together, these allegations suggest at least a possibility that Defendants conduct created a hostile work environment toward women.  *See Landucci*, 65 F.3d at 705.

Defendants argue that Plaintiff's claim is like *McCoy v. Pacific Maritime Ass'n.*, 216 Cal. App. 4th 283, 293–294 (2013), and must be dismissed because "inappropriate and offensive comments made in plaintiff's presence on fewer than ten occasions over a four-month period, including yelling at plaintiff, calling her stupid, and making comments about female employees' buttocks, and crude gestures [are] insufficient to make out a hostile environment claim." Dkt. No. 24 ("Reply") at 8. But *McCoy* is distinguishable because in that case Plaintiff "did not claim any sexual comment or conduct was directed at her" but only alleged that "crude and offensive" comments were made about other women. *McCoy*, 216 Cal. App. 4th at 294. Here, in addition to remarks made to others, Plaintiff has directly alleged that she too was subjected to discriminatory conduct that "unreasonably interfered with [her] work performance" and ability to do her job. The culture of sexism that Plaintiff alleges goes beyond "mere offensive utterance[s]" and if proven, could demonstrate that the "social environment of the workplace became intolerable" based on discriminatory treatment. *Landucci*, 65 F. Supp. 3d at 704–05. Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's gender harassment claim.

### C.  Retaliation

To establish a prima facie case of retaliation under FEHA, a plaintiff must show that (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action; and (3) there was a causal link between the protected activity and her employer's action. *Kelley v. The Conco Cos.*, 196 Cal. App. 4th 191, 209 (2011). Plaintiff asserts that Defendants retaliated against her for the four times she engaged in protected activity. First, Plaintiff alleges that she "submitted an anonymous complaint to the ethics committee" following an incident where a male employee was leading a training and told a female employee that she "probably [didn't] know anything about American football." Compl. at ¶¶ 16–17. Second, Plaintiff alleges that she complained to Mr. Ferreira after another male supervisor told her not to talk during a meeting. *See id*. at ¶ 18. Next, Plaintiff avers that she confronted a supervisor about the more onerous performance goals women were given compared to their male counterparts. *See id*. at ¶ 23. Finally, Plaintiff alleges that she complained to her supervisor after Mr. Ferreira acknowledged each of the men around him with a "high five" but "completely ignored her standing there." *See*

7

*id.* at ¶ 26.

Plaintiff adequately states a claim for retaliation. Plaintiff alleges that she engaged in multiple forms of protected activity. *See id.* at ¶¶ 18, 23, 26; *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1043 (2005) ("It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory."). She also avers that she was subjected to adverse employment action, namely the hostile work environment she experienced. *See Kelley*, 196 Cal. App. 4th at 210 (holding that under FEHA, "creation or tolerance of a hostile work environment for an employee in retaliation for the employee's complaining about prohibited conduct is an adverse employment action"). Finally, Plaintiff has adequately presented factual allegations supporting a causal link between her protected activity and the "misogynistic work environment" she was subjected to. She alleges making several complaints to management about various instances she perceived to be discriminatory, and that shortly after making those complaints she was (among other things) given higher sales goals, "completely ignored" by supervisors, and labeled "emotional." *See* Compl. at ¶¶ 18, 23–26. These allegations support the inference that her complaints to supervisors about the discriminatory social climate at the company (protected activity) motivated the hostile work environment she experienced (adverse employment action). Defendants argue that Plaintiff's claim fails because there is no causal link between her protected activity and the alleged adverse employment action since the alleged hostile work environment predated her complaints to management. *See* Reply at 4. But Plaintiff alleges that the hostile work environment persisted after (and because) she engaged in protected activity. *See* Compl. at ¶¶ 23–26, 32–35. Any factual dispute is properly resolved at summary judgment or trial. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is DENIED.

### D. Failure to Take Steps Necessary to Prevent Gender Discrimination, Harassment, or Retaliation

FEHA makes it unlawful "[f]or an employer. . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). When a plaintiff seeks to recover damages based on a claim of failure to prevent

1  discrimination or harassment she must show three essential elements: 1) plaintiff was subjected to
2  discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent
3  discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury,
4  damage, loss or harm. *Leiland v. City and Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103
5  (N.D. Cal. 2008) (citing California Civil Jury Instructions (BAJI) 12.11). Defendants argue that
6  "Plaintiff fails to state a claim because she has not sufficiently alleged discrimination, harassment,
7  or retaliation." Mot. at 10. But as previously discussed, the Court finds that Plaintiff has
8  adequately alleged gender discrimination, harassment, and retaliation. Moreover, by alleging the
9  repeated instances of harassment, discrimination, and retaliation spanning several years, Plaintiff
10 also adequately alleges that Defendants failed to take all reasonable steps to prevent this
11 discrimination, harassment, and retaliation. Accordingly, Defendants motion to dismiss is
12 DENIED. *See, e.g.*, *Leiland*, 576 F. Supp. 2d at 1103 (denying defendants' motion for summary
13 judgment on plaintiff's Section 12940(k) claim because plaintiff adduced sufficient evidence with
14 respect to discrimination and retaliation claims).

### E. Intentional Infliction of Emotional Distress

To state a cause of action for intentional infliction of emotional distress, "the plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hailey v. California Physicians' Serv.*, 158 Cal. App. 4th 452, 473–74 (2007) (quotation omitted). The conduct alleged must be "so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 474 (citation and internal quotation marks omitted). Defendants argue that Plaintiff's claim must be dismissed because it is preempted by the Workers Compensation Act, and she has failed to adequately allege the elements of the claim. *See* Mot. at 11–13.

The Court finds, based on recent authority from the California Court of Appeal, that Plaintiff's IIED claim is not preempted based on "the long-standing view that unlawful

discrimination and retaliation in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity." *Light v. Dep't. of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017).  Accordingly, Plaintiff "may pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates FEHA and also satisfies the elements of the claim." *Id.*

As to the second question, the Court finds that Plaintiff has sufficiently met the pleading requirements for an IIED claim.  Defendants are correct that "mere personnel management decisions do not support an IIED claim."  *See* Mot. 12; *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").  But as the California Court of Appeal confirmed in *Light*, workplace discrimination in violation of FEHA *can* support an IIED claim.  Here, the Court finds that the allegations in the Complaint sufficiently plead underlying FEHA discrimination and harassment violations.  Plaintiff alleges more than just "personnel management activity."  Instead, she alleges that Defendants paid her less than her male peers, imposed more demanding metrics for success, and ostracized and excluded her from various work-related activities.  While Plaintiff may or may not ultimately be able to prove these allegations, they are enough to survive a motion to dismiss.  *See Kovalenko v. Kirkland & Ellis LLP*, No. 22-cv-05990-HSG, 2023 WL 5444728, at *12 (denying defendants' motion to dismiss IIED claim because plaintiff alleged an underlying FEHA sex discrimination claim premised on defendants falsifying performance reviews and fabricating reasons for her termination); *Hamilton v. Signature Flight Support Corp.*, No. C 05-490 CW, 2005 WL 1514127, at *7 (N.D. Cal. June 21, 2005) (denying defendants' motion to dismiss IIED claim where plaintiff pled supervisor participated in discrimination and fostered a hostile work environment by encouraging harassment and racialized verbal abuse); *Light*, 14 Cal. App. 5th at 102 (reversing grant of summary adjudication in favor of supervisor on IIED claim where "a reasonable trier of fact could find [supervisor] ostracized [plaintiff] in the workplace, encouraged [plaintiff] to lie to investigators, pursued [plaintiff] at home and in the office to determine whether [plaintiff] did so,

1  and verbally and physically attacked [plaintiff] after [she] disobeyed," and the trier of fact could
2  conclude this conduct "was extreme and outrageous (especially in light of [supervisor's]
3  supervisory position), taken for purposes of retaliation prohibited by FEHA, and intended to cause
4  [plaintiff] emotional distress").

### F. Constructive Discharge in Violation of Public Policy

A constructive discharge in violation of public policy gives rise to a tort action in favor of the terminated employee. *Turner v. Anheuser–Busch, Inc.,* 7 Cal. 4th 1238, 1252 (1994). "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." *Id.* at 1244. To prevail on a claim for constructive discharge, a plaintiff must show "that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." *Id.* at 1251. Constructive discharge requires "adverse working conditions [that are] unusually 'aggravated' or amount to a 'continuous pattern.'" *Id.* at 1247. An "employer must either deliberately create the intolerable working conditions that trigger the resignation or, at a minimum, must know about them and fail to remedy the situation in order to force the employee to resign." *Id.* at 1249–50. "The determination whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact." *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987).

Defendants contend that Plaintiff fails to state a claim for constructive discharge because she fails to allege "any facts that would show any 'gender discrimination, harassment, and retaliation' at the time of [her] resignation or any 'extraordinary' or 'egregious' working conditions that might cause a reasonable person to voluntarily give up her livelihood." Mot. at 13–14. Relying on *Turner*, Defendants also argue that the gap between Plaintiff's last allegation of discriminatory conduct (in April 2019) and her resignation (in May 2022) undermines her claim. Reply at 2 (discussing court's finding in *Turner* that employee's choice to work for more than four years after the last allegedly intolerable condition occurred undermined constructive discharge claim).

11

1   In *Turner*, the California Supreme Court was clear that in considering a constructive

2   discharge claim, "the relevant question is what a reasonable employee would have done under the

3   circumstances," such that while the length of time Plaintiff remained at her job may

4   be *one* relevant factor, "[n]either logic nor precedent suggests it should always be dispositive."

5   *Turner*, 7 Cal. 4th at 1254.  The question of whether conditions were so "intolerable" as to justify

6   a reasonable employee's decision to resign is normally a question of fact.  *See Valdez v. City of*

7   *L.A.*, 231 Cal. App. 3d 1043, 1056 (1991) (citing *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th

8   Cir. 1989)).  A continuous pattern of discrimination, deprivation of opportunities, and having to

9   meet a higher performance standard can support a constructive discharge claim.  *See id.* at 1057

10  ("[Plaintiff] alleges a continuous pattern of discrimination which began in 1982 and included

11  discriminatory promotional examinations, deprivation of training opportunities, having to meet a

12  higher standard of performance than non-Hispanics, and denial of assignments which could have

13  led to advancement opportunities.  We believe these facts, taken as true . . . constitute sufficient

14  aggravating factors such that a trier of fact could . . . conclude a reasonable employee would be

15  justified in resigning."); *Nolan v. Cleland*, 686 F.2d 806, 813–14 (9th Cir. 1982) (reversing district

16  court's grant of summary judgment against plaintiff on Title VII constructive discharge claim

17  based on evidence of numerous instances of discrimination, including being deprived of

18  opportunities, receiving inaccurate (and discriminatorily motivated) evaluations, and being

19  assigned to a position she had not requested).  Because Plaintiff has alleged facts supporting an

20  inference that she was subjected to a pattern of discriminatory treatment, the Court finds that she

21  has alleged enough to support a constructive discharge claim.  Factual disputes based on the

22  timing of Plaintiff's resignation are for summary judgment or trial.

### G. California Equal Pay Act Discrimination

24  To prove a prima facie case of wage discrimination, "a plaintiff must establish that, based

25  on gender, the employer pays different wages to employees doing substantially similar work under

26  substantially similar conditions." *Allen v. Staples, Inc.*, 84 Cal. App. 5th 188, 194 (2022).  The

27  California Equal Pay Act is nearly identical to the federal statute and subject to the same analysis.

28  *Galena Goins v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH, 2022 WL 17652798, at *2 (N.D.

Cal. Dec. 13, 2022) (citing *Green v. Par Pools Inc.*, 111 Cal. App. 4th 620, 623 (2003)). Defendants argue that Plaintiff's claim fails because she has not alleged facts sufficient to show that she performed "substantially similar" work or that she received unequal pay based on her gender. Mot. at 14. The Court disagrees. Plaintiff alleges that she was a salesperson at Aruba Networks who was paid (in part) based on reaching sales goals set by management. Compl. at ¶¶ 12, 30–33. She alleges that her male sales counterparts were given lighter sales goals that enabled them to earn greater pay. *See id*. Plaintiff is not required to allege that she performed an identical job to her male co-workers, but instead must just allege that their roles were substantially equal. *See Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983). At this stage, she has done that. She has also alleged that she was "the lowest paid on her team" despite doing similar work and being "given the highest goals to reach compared to her male counterparts." Compl. at ¶ 34. Accordingly, Plaintiff has alleged enough for her Equal Pay Act claim to proceed.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

13

## IV. CONCLUSION

Defendants' motion to dismiss **DENIED**.[4]  Dkt. No. 15.

Further, the Court **SETS** a case management conference for July 30, 2024 at 2:00 P.M., with a joint case management statement due by July 23, 2024.  The hearing will be held by Zoom Webinar.  All counsel shall use the following link to access the hearing:

> https://cand-uscourts.zoomgov.com/j/1607976056?pwd=aW5IeE14UkJRbkdPTGJFWFUrRG1Cdz09
>
> **Meeting ID:** 1607976056
>
> **Password:** 129759

All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check-in with the CRD.  All counsel may access the webinar information at:  Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/

**IT IS SO ORDERED.**

Dated:   7/11/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Defendants argue that to the extent their motion to dismiss is denied, the Court should order Plaintiff to provide a more definitive statement under Fed. R. Civ. P. 12(e).  That request is **DENIED** because the complaint's allegations are adequate for the reasons detailed above.

14